**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SAM CARLISLE,<br><br>Plaintiff,<br><br>v.<br><br>HEALTHCARE REALTY TRUST INCORPORATED, TODD J. MEREDITH, JOHN V. ABBOTT, NANCY H. AGEE, EDWARD H. BRAMAN, AJAY GUPTA, JAMES J. KILROY, PETER F. LYLE, SR., JOHN KNOX SINGLETON, and CHRISTANN M. VASQUEZ,<br><br>Defendants. | Civil Action No. _______<br><br>**COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY TRIAL DEMAND** |

Plaintiff Sam Carlisle ("Plaintiff"), by and through his undersigned counsel, alleges the following upon information and belief, including investigation of counsel and review of publicly available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Healthcare Realty Trust Incorporated ("HR" or the "Company") and HR's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to sell the Company to Healthcare Trust of America, Inc. ("HTA") (the "Proposed Transaction").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy") to be filed with the SEC on June 10, 2022. The Proxy recommends that HR stockholders

vote in favor of a proposed transaction (the "Proposed Transaction") whereby HR is acquired by HTA. The Proposed Transaction was first disclosed on February 28, 2022, when HR and HTA announced that they had entered into an Agreement and Plan of Merger (the "Merger Agreement"), pursuant to which HR stockholders will receive 1.00 share of HTA common stock for each share of HR common stock that they hold (the "Merger Consideration"). Upon completion of the Proposed Transaction, HTA stockholders will own approximately 60% of the combined company, while HR stockholders will own approximately 40% of the combined company.

3. The Proxy, which recommends that HR stockholders vote their shares in favor of the Proposed Transaction, is materially incomplete and contains misleading representations and information concerning, among other things: (i) the financial projections for the Company, HTA, and the pro forma combined company; (ii) the financial analyses that support the fairness opinion provided by the Company's financial advisor, Citigroup Global Markets, Inc. ("Citi"); (iii) potential conflicts of interest faced by Citi and the Company's additional financial advisor Scotia Capital (USA) Inc. ("Scotiabank"); and (iv) the background of the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction, including filing an amendment to the Proxy with the SEC or otherwise causing an amendment to be disseminated to HR's stockholders, unless and until the material information discussed below is included in any such amendment or is otherwise disseminated to HR's stockholders. In the event the Proposed

Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the Defendants' violations.

## PARTIES

5. Plaintiff is, and has been at all relevant times, the owner of shares of HR common stock.

6. Defendant HR is a Maryland corporation, with its principal executive offices located at 3310 West End Avenue, Suite 700, Nashville, Tennessee 37203. HR's common stock trades on the New York Stock Exchange under the ticker symbol "HR."

7. Defendant Todd J. Meredith has been Chief Executive Officer and President of the Company since December 2016, and a director of the Company since 2017.

8. Defendant John V. Abbott has been a director of the Company since 2019.

9. Defendant Nancy H. Agee has been a director of the Company since 2016.

10. Defendant Edward H. Braman has been a director of the Company since 2018.

11. Defendant Ajay Gupta has been a director of the Company since 2021.

12. Defendant James J. Kilroy has been a director of the Company since 2020.

13. Defendant Peter F. Lyle, Sr. has been a director of the Company since 2016.

14. Defendant John Knox Singleton has been a director of the Company since 1993. Defendant Singleton serves as Chairman of the Board.

15. Defendant Christann M. Vasquez has been a director of the Company since 2015.

16. Defendants identified in paragraphs 7-15 are collectively referred to herein as the "Board" or the "Individual Defendants."

17. Nonparty HTA is a Maryland corporation with its principal executive offices located at 16435 N. Scottsdale Road, Suite 320, Scottsdale, Arizona 85254. HTA's common stock trades on the New York Stock Exchange under the ticker symbol "HTA."

## JURISDICTION AND VENUE

18. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

19. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations within this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

20. Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391, because a significant amount of the conduct at issue took place and had an effect in this District.

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

21. HR is a self-managed and self-administered real estate investment trust that owns, leases, manages, acquires, finances, develops and redevelops income-producing real estate properties associated primarily with the delivery of outpatient healthcare services throughout the U.S. As of March 31, 2022, HR's portfolio consisted of approximately $5.2 billion invested in 242 real estate properties, construction in progress, redevelopments, financing receivables, financing lease right-of-use assets, land held for development and corporate property.

22. On February 28, 2022, the Company entered into the Merger Agreement with HTA. According to the press release issued the same day announcing the Proposed Transaction:

> HEALTHCARE REALTY AND HEALTHCARE TRUST OF AMERICA ENTER INTO $18 BILLION STRATEGIC COMBINATION
>
> Creates Preeminent, High Quality MOB REIT
>
> Led by Existing Healthcare Realty Executive Team and Chairman
>
> Healthcare Realty Name and Ticker Symbol (NYSE: HR)
>
> Expected to be Accretive with Material Cost Synergies and Operational Upside
>
> Conference Call to be held at 8:30 AM E.T.
>
> NASHVILLE, Tennessee and SCOTTSDALE, Arizona, February 28, 2022 — Healthcare Realty Trust Incorporated (NYSE:HR) ("Healthcare Realty" or "HR") and Healthcare Trust of America, Inc. (NYSE: HTA) ("Healthcare Trust of America" or "HTA") today announced that they have agreed to enter into a strategic business combination. HTA shareholders will receive a total implied value of $35.08 per share comprised of a special cash dividend of $4.82 per share and a transaction exchange ratio of 1:1 based on HR's unaffected price of $30.26 on February 24, 2022. This transaction brings together two of the largest owners of medical office buildings, creating the preeminent, pure-play medical office building REIT and positions the combined company (the "Company") to create long-term shareholder value. The Company will have a pro forma equity market capitalization of approximately $11.6 billion and a total enterprise value of $17.6 billion based on the implied values at market close on February 24, 2022.
>
> **Leadership and Organization**
>
> The Company will be led by the Healthcare Realty management team, with Todd Meredith as President and Chief Executive Officer and Kris Douglas as Executive Vice President and Chief Financial Officer. Upon completion of the transaction, the new Company will continue to operate with the Healthcare Realty name and trade on the NYSE under the ticker symbol HR.
>
> The Company will have a highly qualified, diverse Board of Directors comprised of nine existing directors of Healthcare Realty, three members of the Healthcare Trust of America Board, and one new member to be mutually agreed upon by the existing HR and HTA directors and appointed prior to closing of the transaction. Knox Singleton, Chairman of the Healthcare Realty Board, will be Chairman of the Company and Brad Blair, Chairman of the Healthcare Trust of America Board, will be appointed Vice Chairman.
>
> Upon completion of the transaction, the Company's headquarters will be based in Nashville, with additional corporate offices in Scottsdale and Charleston. The Company will implement a detailed integration process to ensure continuity for tenants, employees and all stakeholders.

"We are pleased to announce this strategic transaction, which unites two highly complementary medical office portfolios and represents a rare opportunity to create a sector-leading REIT in terms of both size and quality. We believe all shareholders will benefit from the Company's expanded national footprint from HR's Seattle portfolio to HTA's Boston portfolio. The Company will have unmatched market scale in concentrated clusters, meaningful corporate and operational synergies, and a larger development pipeline. We believe this transaction will be accretive through near term synergies with additional value from operational upside. It will also strengthen the combined balance sheet, enhance liquidity and improve access to capital. This combination provides a significant value creation opportunity for shareholders," stated Todd Meredith, President and Chief Executive Officer, Healthcare Realty.

"This transformative transaction joins two premier real estate companies with a combined value that we believe is much greater than the sum of its parts, with the operational and financial scale necessary to compete and drive sustainable value creation. HTA shareholders will realize an attractive premium via a special cash dividend while being able to fully participate in the future growth prospects of a powerful, sector leading MOB REIT, led by a seasoned, well-respected management team. This transaction is the culmination of a thorough strategic review process and we are pleased with the result for our shareholders, employees and tenants. We are confident this is the best path forward for HTA," stated Brad Blair, Chairman of the Board, Healthcare Trust of America.

**Key Benefits**

The combination of Healthcare Realty and Healthcare Trust of America is expected to result in significant strategic, operational and financial benefits to shareholders, including:

- Creates Preeminent, High Quality MOB REIT: With 727 properties totaling 44 million square feet, the Company will be the largest pure-play MOB REIT, with nearly double the square footage of the next largest MOB portfolio. The Company will own the largest portfolio of on or adjacent to hospital campus properties comprising 28.2 million square feet. 94% of the portfolio's square feet will be in top 100 MSAs.

- Achieves Critical Scale with Enhanced Clusters: The Company will own over 1 million square feet in 14 distinct markets, representing over 50% of the portfolio's square feet. Nearly 80% of the portfolio's square footage will be located in markets with over 500,000 square feet. Meaningful scale in markets drives operational efficiencies for tenants and incremental leasing and investment volumes. Across the entire portfolio, the Company will have 147 clusters, each comprised of two to eleven properties within two miles of each other and averaging approximately 195,000 square feet per cluster.

- Broadens Relationships and Portfolio Diversification: The portfolio will include properties associated with 57 of the Top 100 health systems in the U.S. on or adjacent to 231 hospital campuses. The top 10 tenants in the portfolio will represent 22.6% of the portfolio's square feet with no single tenant representing more than 5.2%.

- Expands Development Pipeline: The Company will have an embedded development pipeline in excess of $2 billion, concentrated in high growth markets such as Seattle, Houston, Denver, Dallas and Raleigh.

- Material Cost Synergies: The Company expects to realize annual run rate cost synergies of $33 – 36 million within 12 months of closing from the elimination of duplicative corporate and public company costs.

- Accretive with Operational Upside: The transaction is expected to be accretive to Healthcare Realty's per share results assuming full realization of synergies. Longer term, the Company expects to benefit from enhanced leasing volumes to drive occupancy and rent growth across the portfolio as well as property level cost savings.

- Greater Access to Capital and Balance Sheet Strength: The Company intends to maintain a flexible, investment grade-rated balance sheet with a well staggered debt maturity profile. With enhanced size and scale, the Company expects to benefit from greater liquidity, higher index weightings and reduced borrowing costs over time.

**Transaction Structure**

At closing, each share of HR common stock will be exchanged for one share of HTA common stock, at a fixed ratio. In addition, a special cash dividend of $4.82 per share will be distributed to HTA shareholders. Taken together and based on HR's share price at the close of markets on February 24, 2022, HTA shareholders will realize an implied value of $35.08 per HTA share, representing an 18.2% premium to HTA's share price at the close of markets on February 24, 2022. This combination is structured as a reverse merger whereby Healthcare Trust of America will be the corporate successor and the Company's name will continue as Healthcare Realty Trust Incorporated. Pro forma for the transaction HR and HTA shareholders will own 39% and 61% of the Company, respectively.

The special cash dividend of approximately $1.1 billion will be financed through joint venture transactions and asset sales. JPMorgan Chase Bank, N.A. has provided a commitment letter to Healthcare Trust of America for a $1.7 billion debt financing for the transaction upon the terms and conditions set forth in the letter.

The transaction is expected to close in the third quarter of 2022, subject to customary closing conditions, including the approval of both Healthcare Realty and Healthcare Trust of America shareholders. The transaction was unanimously approved by the Board of Directors of HR and the Board of Directors of HTA.

**B. The Materially Incomplete and Misleading Proxy**

23. On June 10, 2022, Defendants filed the Proxy with the SEC. The purpose of the Proxy is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to vote in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff. Without such information, Plaintiff cannot make a fully informed decision concerning whether to vote in favor of the Proposed Transaction.

***Materially Incomplete and Misleading Disclosures Concerning the Financial Projections for HR, HTA and the Pro Forma Combined Company***

24. The Proxy discloses management-prepared financial projections for the Company that are materially misleading. The Proxy indicates that in connection with the rendering of Citi's fairness opinion, Citi reviewed "certain financial forecasts and other information and other data relating to HR and [HTA] which were provided to or discussed with City by the respective managements of HR and [HTA]." Accordingly, the Proxy should have, but failed to, provide certain information in the projections that HR's management provided to the Board and Citi.

25. For example, with respect to the Company's and HTA's financial projections, the Proxy fails to disclose all line items underlying: (i) Net Operating Income ("NOI"); (ii) EBITDA; (iii) Funds from Operations; (iv) Funds Available for Distribution; and (v) Unlevered Free Cash Flow ("UFCF"). The Proxy also fails to disclose the UFCFs that the combined company were expected to generate during fiscal years ending December 31, 2022 through December 31, 2026, utilized by Citi in connection with its discounted cash flow analysis ("DCF") of the pro forma combined company.

26. Additionally, the Proxy fails to disclose the "potential strategic implications and operational benefits (including the amount, timing and achievability thereof) anticipated by the

management of HR to result from the Merger," relied upon by Citi in connection with its financial analyses. Proxy at 65.

***Materially Incomplete and Misleading Disclosures Concerning Citi's Financial Analyses***

27. With respect to Citi's DCF of each of HR and HTA, the Proxy fails to disclose a quantification of: (i) the terminal values of each company; and (ii) the inputs and assumptions underlying the discount rate ranges of 7.21% to 8.02% for HR and 7.00% to 7.78% for HTA.

28. With respect to Citi's DCF of the pro forma combined company, in addition to the UFCFs of the combined company set forth above, the Proxy fails to disclose: (i) the cost savings used in the analysis; (ii) the metric to which Citi applied exit capitalization rates ranging from 4.75% to 5.50% and 4.50% to 5.25%, and quantification thereof; and (iii) quantification of the inputs and assumptions underlying the discount rate ranges of 7.21% to 8.02% and 6.81% to 7.62%.

29. With respect to Citi's *Selected Public Companies Analysis*, the Proxy fails to disclose the individual multiples and financial metrics for each of the companies observed by Citi.

30. With respect to Citi's price targets analysis, the Proxy fails to disclose: (i) the individual price targets observed; and (ii) the sources thereof.

31. With respect to Citi's net asset value per share estimates analysis, the Proxy fails to disclose: (i) the individual net asset values per share observed; and (ii) the sources thereof.

***Materially Incomplete and Misleading Disclosures Concerning Potential Conflicts of Interest***

32. The Proxy fails to disclose material information concerning the potential conflicts of interest faced by Citi and Scotiabank. For example, the Proxy fails to disclose whether Citi has performed any services for any parties to the Merger Agreement in the two years preceding the

date of its fairness opinion and, if so, details of the services provided and compensation received in connection with such services.

33. Moreover, with respect to Citi's and Scotiabank's participation in potential financings in connection with the Proposed Transaction (*see id.* at 71), the Proxy fails to disclose: (i) when HR first requested Citi and Scotiabank to participate in the financings; and (ii) the amount of compensation Citi and Scotiabank can expect to receive in connection with such financing participation.

***Materially Incomplete and Misleading Disclosures Concerning the Background of the Proposed Transaction***

34. The Proxy fails to disclose material information concerning the background of the Proposed Transaction. Specifically, the Proxy fails to disclose the terms of the "prior standstill agreement" between HR and Welltower Inc. ("Welltower") (also identified in the Proxy as "Party F"), as well as any other standstill agreements HR executed with third parties, including whether they contain a "don't-ask, don't-waive" standstill provision that is still in effect and precluding Welltower or any other party from submitting a further topping bid for the Company. Notably, according to the Proxy: "[o]n April 4, 2022, [HTA's] legal counsel sent a letter advising Party F to cease and desist in its efforts to acquire HR based on [HTA's] view that such course of action by Party F is inconsistent with a prior standstill agreement between the parties." *Id*. at 50.

35. This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to the Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. And without all material information, Plaintiff is unable to make a fully informed decision in connection with the Proposed Transaction and faces irreparable harm, warranting the injunctive relief sought herein.

36. In addition, the Individual Defendants knew or recklessly disregarded that the Proxy omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

37. Specifically, the Individual Defendants undoubtedly reviewed the contents of the Proxy before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the Proxy omits the material information referenced above and contains the incomplete and misleading information referenced above.

38. Further, the Proxy indicates that on February 27, 2022, Citi reviewed with the Board its financial analysis of the Merger Consideration and delivered to the Board an oral opinion, which was confirmed by delivery of a written opinion of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to HR stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning Citi's financial analyses which has been omitted from the Proxy, and thus knew or should have known that such information has been omitted.

39. Plaintiff is immediately threatened by the wrongs complained of herein, and lacks an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that he will continue to suffer absent judicial intervention.

**CLAIMS FOR RELIEF**

**COUNT I**

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Defendants have filed the Proxy with the SEC with the intention of soliciting HR stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide the material information referenced above.

42. In so doing, Defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of HR, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).

43. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that such communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

44. Specifically, and as detailed above, the Proxy violates Section 14(a) and Rule 14a-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of HR's shares and the financial analyses performed by Citi in support of its fairness opinion; (iii) potential conflicts of interest; and (iv) the background of the Proposed Transaction.

45. Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the Proxy is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that Citi reviewed and discussed its financial analyses with the Board during various meetings including on February 27, 2022, and

further states that the Board considered Citi's financial analyses and fairness opinion in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

46. The misrepresentations and omissions in the Proxy are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of HR within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of HR and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to the time the Proxy was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

51. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing an amendment to the Proxy with the SEC or otherwise disseminating an amendment to the Proxy to HR stockholders unless and until Defendants agree to include the material information identified above in any such amendment;

B. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

C. In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff rescissory damages;

D. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

E. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

F. Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: June 23, 2022

**ROWLEY LAW PLLC**

*S/ Shane T. Rowley*

Shane T. Rowley (SR-0740)
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Tel: (914) 400-1920
Fax: (914) 301-3514
Email: srowley@rowleylawpllc.com
Email: drl@rowleylawpllc.com

*Attorneys for Plaintiff*